UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>HAWAIIAN TELCOM COMMUNICATIONS, INC. et. al.,<br><br>Debtors. | Case No.: 08-02005<br>(Chapter 11)<br>Jointly Administered |
| LEHMAN COMMERCIAL PAPER INC., as Administrative Agent and Collateral Agent for the Secured Lenders,<br><br>Plaintiff,<br><br>vs.<br><br>THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF HAWAIIAN TELCOM COMMUNICATIONS, INC.,<br><br>Defendant. | Adv. Pro. No.: 09-90023<br><br><br><br><br><br>Re: Docket No. 6 |

**OPINION CONCERNING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

This is an adversary proceeding in bankruptcy. Fed. R. Bankr. P. 7001-87. Debtors[1] in the underlying consolidated bankruptcy case, collectively, are the

---

[1] Debtors in the underlying consolidated Chapter 11 case are: (1)Hawaiian Telcom Communications, Inc.; (2) Hawaiian Telcom Holdco, Inc.; (3) Hawaiian Telcom, Inc.; (4) Hawaiian Telcom Services Company, Inc.; (5) Hawaiian Telcom IP Service Deliver Investment, LLC; (6) Hawaiian Telcom IP Service Delivery Research, LLC; (7) Hawaiian Telcom IP Video Investment LLC; and (8) Hawaiian Telcom IP Video Research, LLC.

major telephone company in the State of Hawaii. They are not parties to this adversary proceeding.

Plaintiff is Lehman Commercial Paper Inc. ("***LCPI***") acting as administrative agent and collateral agent for a group of Debtors' secured lenders (the "***Secured Lenders***"). The complaint seeks a declaration that Plaintiff, as collateral agent, has valid and perfected security interests in almost all real and personal property of Debtors.

Defendant is The Official Committee of Unsecured Creditors of Debtors (the "***Committee***"). Debtors have waived any challenges to the validity of Plaintiff's liens, but the court has given the Committee standing to make such challenges. The Committee asserts that certain of Plaintiff's claimed liens and security interests are invalid or unperfected.

Before the court is Plaintiff's motion for summary judgment (docket no. 6) (the "***Motion***"). The Motion seeks a declaratory judgment that Plaintiff's liens are valid.

## II.   FACTS

### A.   Debtors' Chapter 11 Cases

On December 1, 2008 (the "***Petition Date***"), Debtors filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, District of Delaware. Debtors' Chapter 11 cases were transferred to the United States Bankruptcy Court, District of Hawaii on December 22, 2008.

2

As of the Petition Date, Debtors operated the largest incumbent local exchange carrier for the State of Hawaii, which is estimated to be the tenth largest incumbent local exchange carrier in the United States, with an integrated telecommunications network servicing approximately 524,000 switched access lines as of September 30, 2008. Debtors also served approximately 253,000 long distance lines and had 95,000 high-speed internet connections.

**B.     2005 Sale of Debtors**

In 2005, Debtors were sold by the prior owner, Verizon Hawaii, Inc., to the present owner, The Carlyle Group. The Secured Lenders provided the financing for that transaction. In June, 2005, the parties executed a Credit Agreement (the "*2005 Credit Agreement*"), a Guarantee and Collateral Agreement (the "*2005 Collateral Agreement*"), and a Mortgage (the "*2005 Mortgage*") (collectively, the "*2005 Agreements*"). The collateral agent for the Secured Lenders in connection with the 2005 sale was JP Morgan Chase Bank.

Public utilities as defined in Haw. Rev. Stat. § 269-1 are subject to the jurisdiction of the Hawaii Public Utilities Commission (the "*HPUC*"). Pursuant to Haw. Rev. Stat. § 269-17, a public utilities corporation must obtain the HPUC's approval prior to issuing notes or evidence of indebtedness that are payable at periods of more than twelve months. If a required authorizing order is not obtained, the notes and evidence of indebtedness are void under § 269-17. Debtors received HPUC approval for the 2005 Agreements.

3

C.  **The 2007 Amended Credit Agreement, Amended Guaranty and Collateral Agreement, and Amended Mortgage** (collectively, the "*2007 Amended Agreements*")

The 2007 Amended Agreements are the subject matter of this adversary proceeding.

On June 1, 2007, Hawaiian Telcom Holdco, Inc. and Hawaiian Telcom Communications, Inc., the Secured Lenders, and Plaintiff as administrative agent, entered into an amended and Restated Credit Agreement with the Secured Lenders (the "*Amended Credit Agreement*"), which provided for a revolving credit facility in the amount of $200 million (of which $90 million was available to Debtors) and a Tranche C term loan in the amount of $860 million. The Amended Credit Agreement names Plaintiff as the administrative and collateral agent for the Secured Lenders. The obligations under the Amended Credit Agreement are secured pursuant to an amended and Restated Guaranty and Collateral Agreement security agreement (the "*Amended Guaranty and Collateral Agreement*"). The Amended Guaranty and Collateral Agreement granted Plaintiff, as collateral agent, a security interest in Debtors' assets, including:

> all right, title or interest in or to any and all of the following assets and properties now owned or at any time hereafter acquired by [Debtors] or in which such [Debtor] Grantor now has or at any time in the future may acquire any right, title or interest . . . : (i) all Accounts; (ii) all Chattel Paper; (iii) all Deposit Accounts; (iv) all Documents; (v) all Equipment; (vi) all General Intangibles; (vii) all Instruments; (viii) all Inventory; (ix) all Investment Property; (x) Letter-of-Credit rights; (xi) all books and records pertaining to the [Perfected Collateral]; and (xii) to the extent not otherwise included, all Proceeds and products of any and all of the foregoing and all collateral

4

      security and guarantees given by any Person with respect to any of the foregoing.

On June 29, 2007, Debtors and Plaintiff entered into an Amended and Restated Mortgage, Assignment of Leases and Rents, Security Agreement, Financing Statement and Fixture Filing; Collateral Agent Agreement (the "***Amended Mortgage***"). Plaintiff is the mortgagee. The Amended Mortgage was filed with the Hawaii Bureau of Conveyances. The Amended Mortgage granted liens and security interests in 39 of Debtors' 128 parcels of owned real property (the "***Encumbered Real Property***"), including:

> (1) the land more particularly described on Exhibit B [to the Amended Mortgage] (the "***Land***"), together with all rights appurtenant thereto, including the easements over certain other adjoining land granted by any easement agreements, covenant or restrictive agreements and all air rights, water rights, oil and gas rights, and development rights, if any, relating thereto, and also together with all of the other easements, rights, privileges, interests, hereditaments and appurtenances thereunto belonging or in any way appertaining and all of the estate, right, title, interest, claim or demand whatsoever of [Debtor] therein, either in law or in equity, in possession or expectancy, now or hereafter acquired . . . , (2) all buildings, improvements, structures, towers, paving, parking areas, walkways and landscaping now or hereafter erected or located upon the Land, and all fixtures of every kind and type affixed to the Premises or attached to or forming part of any structures, buildings or improvement and replacements thereof now or hereafter erected or located upon the Land . . . .

Plaintiff is a party to each of the 2007 Amended Agreements. Plaintiff, as the collateral agent, is authorized by the Amended Guaranty and Collateral Agreement to file financing statements, including transmitting utility filings. The

Amended Guaranty and Collateral Agreement also authorizes Plaintiff, as collateral agent, to act as attorney-in-fact to take any action necessary to accomplish the purposes of that agreement, including commencing and prosecuting any suits, actions or proceedings necessary to enforce any rights in respect of any collateral.

Plaintiff, as collateral agent for the Secured Lenders, filed UCC-1 financing statements describing "all assets" of Debtors with the Hawaii Bureau of Conveyances and with the Delaware Secretary of State. Plaintiff filed transmitting utility financing statements against Debtors with the Hawaii Bureau of Conveyances and with the Delaware Secretary of State.

The HPUC did not authorize any of the 2007 Amended Agreements. Commission approval was not requested by Debtors or by LCPI.

### D.  Investment and Deposit Accounts

As of the Petition Date, (i) approximately 90% – or $68.2 million – of Debtors' cash was held in an investment account with Wells Fargo Bank, and (ii) the remainder of Debtors' cash was held in deposit accounts with the Bank of Hawaii and the First Hawaiian Bank.

### E.  Motor Vehicles

The parties agree that Plaintiff has an unperfected security interest in Debtors' fleet of approximately 496 motor vehicles. The lien is unperfected, because Plaintiff did not record its liens on the certificates of ownership of Debtors' motor vehicles. Haw. Rev. Stat. § 286-52.

### III. ISSUE

The issue presented by this Motion is whether Plaintiff, on behalf of the Secured Lenders, holds valid and perfected liens and security interests in Debtors' assets and property as described in the 2007 Amended Agreements.

### IV. DISCUSSION

#### A. Motion for Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and judgment as a matter of law is proper. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of identifying evidence which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The issue of material fact necessary to defeat summary judgment "is not required to be resolved conclusively in favor of the party asserting its existence[.]" First Nat. Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Rather, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Id.

In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. State Farm Fire & Cas. Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989).

#### B. The Hawaii Public Utilities Commission

7

A threshold issue concerns the relationship between this court and the HPUC. The issue arises because the Committee argues that Plaintiff's loans, liens and security interests, as created by the 2007 Amended Agreements, are void because Debtors entered into the transactions without the prior approval of the HPUC. The Committee's argument is based upon the concluding paragraph of Haw. Rev. Stat. § 269-17, which states, "All stock and every stock certificate, and every bond, note or other evidence of indebtedness of a public utility corporation not payable within twelve months, issued without an order of the commission authorizing the same, then in effect, shall be void." [2]

The 2005 Agreements enabled The Carlyle Group to purchase Debtors from Verizon. Those agreements were authorized by order of the HPUC in Docket No. 04-0140, Decision and Order 21696 (Haw. Pub. Util. Comm'n., Mar. 16, 2005). There is no HPUC order authorizing the 2007 Amended Agreements.

Plaintiff denies that an order of the HPUC was necessary for the 2007 Amended Agreements and, in addition, argues that only the HPUC can declare an obligation of a public utility corporation to be void. In other words, section 269-17 does not create private rights of action that interested parties can seek to enforce in a court.

The statute is silent about court involvement, but a review of the statutory

---

[2] Haw. Rev. Stat. § 269.19 contains similar language: "No public utility corporation shall . . . mortgage, or otherwise encumber the whole or any part of its . . . system . . . without first having secured from the public utilities commission an order authorizing it to do so. Every such . . . encumbrance . . . made other than in accordance with the order of the commission shall be void."

8

scheme indicates that only the HPUC can declare a lien to be void under sections 269-17 and 269-19.

The question of whether or not section 269-17 affects the validity of the 2007 Amended Agreements is specially and uniquely within the jurisdiction of the HPUC. This view is supported by section 269-16.9, which gives to the HPUC, and only the HPUC, the power to exempt a telecommunications provider from "any or all of the provisions of this chapter . . . upon a determination that the exemption is in the public interest".[3]

In a matter not involving Hawaiian Telcom, the HPUC has determined that section 269-16.9 does not authorize retroactive approval for actions already taken. 2005 Haw. PUC LEXIS 60. However, the HPUC also held, under the similar 'void' language in section 269-19, that it had retroactive authority to waive regulatory requirements, if in the public interest.

The requirement that the HPUC consider the public interest lends itself to the argument that only the HPUC can consider whether or not loans and liens are void because of the absence of an authorizing order from the HPUC.

Inclusive elements of public interest are set forth in section 269-16.9. Determining what is in the public interest includes consideration of changes in the structure and technology of the State's telecommunications industry, competitive factors among providers, fair and reasonable rates, possible prejudice to rate

---

[3] Section 269-34 concerns tariff and non-financial obligations of telecommunications carriers, and has no relevance to this adversary proceeding.

9

payers, and other considerations listed in section 269-16.9. These considerations are part of the ordinary course of business of the HPUC. A court could not hope to match the HPUC's expertise in dealing with the statutory definition of public interest.

The parties to this adversary proceeding and the court anticipate that any plan of reorganization in the Hawaiian Telcom case will involve a change of ownership and require HPUC approval. If the question of whether or not Plaintiff's loans and liens are void under section 269-17 comes before the HPUC, there will be at least two questions: First, was an authorizing order from the HPUC necessary, before Debtors entered into the 2007 Amended Agreements? Second, if such an order was necessary, but not obtained by Debtors, should the HPUC, in the public interest, retroactively waive the required authorizing order? These two questions are uniquely within the jurisdiction and expertise of the HPUC. For a court to attempt to answer these questions which arise under Chapter 269 of the Hawaii Revised Statutes, entitled Public Utilities, would be an unauthorized intrusion into the HPUC's jurisdiction. It would also create the possibility of an inconsistent ruling from the HPUC.

For the reasons stated above, it will be held that Haw. Rev. Stat. § 269-17 does not create a private right of action to attack the validity of loans or liens granted by a public utility, except before the HPUC.

**C.    Motor Vehicles.**

Plaintiff concedes that its security interest in Debtors' motor vehicles is

10

unperfected. Debtors granted to the Secured Lenders liens and security interests in "all Equipment" which includes motor vehicles. Under Haw. Rev. Stat. § 286-52, the secured party's interest must be noted on the pertinent certificate of ownership in order to perfect a lien on a motor vehicle. The Secured Lenders' liens were not reflected on the motor vehicle certificates of ownership.

Plaintiff's motion for summary judgment will be denied as to Debtors' motor vehicles.

**D.  The Amended Mortgage**

The Defendant has raised no objections to the validity of the Amended Mortgage. The Amended Mortgage is valid and enforceable. Plaintiff's motion will be granted as to liens created by the Amended Mortgage.

**E.  Easements And Rights Of Way**

Plaintiff has a perfected and enforceable security interest in those easements and rights of way over or appurtenant to the Encumbered Real Property. The Amended Mortgage grants a security interest to Plaintiff in those easements and rights of way over or appurtenant to the Encumbered Real Property. The Amended Mortgage was filed with the Hawaii Bureau of Conveyances and is properly perfected.

Plaintiff does not claim a security interest in the easements and rights of way not appurtenant to the Encumbered Real Property.

Plaintiff's motion for summary judgment will be granted as to easements and rights of way over the Encumbered Real Property.

11

F.  **Fixtures**

The Plaintiff has a valid and perfected security interest in Debtors' fixtures attached to the Encumbered Real Property. A record of mortgage is effective as a fixture filing if: (a) it indicates the goods that it covers, (b) if the goods are or are to become fixtures related to the mortgaged real property, (c) if the mortgage otherwise satisfies the requirements for financing statements, and (d) if the mortgage is duly recorded. Haw. Rev. Stat. § 490: 9-502(c). The Amended Mortgage specifically identifies fixtures affixed to or located on the Encumbered Real Property as collateral subject to security interests in favor of Plaintiff. The Amended Mortgage was properly recorded in the Hawaii Bureau of Conveyances and is therefore a valid fixture filing.

The Plaintiff also has a valid and perfected security interest in Debtors' fixtures that are not attached to the Encumbered Real Property. To create a valid and perfected security interest, a party must first attach its interest to the collateral. There are three steps to attach an interest in fixtures to collateral:

(1) The Secured Lender gives value;

(2) Debtors gain rights in the collateral; and

(3) The Secured Lenders gain possession, control, or execute an authenticated security agreement. The security agreement must be signed by Debtors and describe the collateral by reasonably identifying the collateral.

Haw. Rev. Stat. § 490: 9-203(b).

12

In this case, Plaintiff gave value and Debtors gained the rights to the collateral as evidenced in the Amended Credit Agreement and Amended Mortgage. In satisfaction of the third requirement, Debtors and the Secured Lenders executed a security agreement, the Amended Guaranty and Collateral Agreement.

By executing the Amended Guaranty and Collateral Agreement, the Plaintiff's interest attached to all *reasonably identified* collateral. Under Haw. Rev. Stat. § 490: 9-108(b), collateral is reasonably identified if the identification is by: "(1) specific listing; (2) category; (3) [and] . . . a type of collateral defined in [the UCC]."

The Amended Guaranty and Collateral Agreement expressly includes the Debtors' "Equipment." Equipment, in turn, is defined as "goods other than inventory, farm products or consumer goods," Haw. Rev. Stat. § 490: 9-102(a)(33), and "goods" are "all things that are movable when a security interest attaches" and explicitly "includes fixtures." Haw. Rev. Stat. § 490: 9-102(a)(44). The inclusion of "Equipment" reasonably identifies any goods, other than inventory, farm products, or consumer goods that is or may become a fixture.

Once a party's interest is attached to the collateral, the party must then perfect its interest. Generally, with respect to fixtures, a party perfects its interest by filing a financing statement in the Hawaii Bureau of Conveyances. Haw. Rev. Stat. § 490: 9-501(b). The financing statement must:

(1)  Indicate that it covers this type of collateral;

13

(2) Indicate that it is to be filed for record in the real property records;

(3) Provide a description of the real property to which the collateral is related; and

(4) If the debtor does not have an interest of record in the real property, provide the name of a record owner.

. . .

Haw. Rev. Stat. § 490: 9-502(b).

However, there is an exception to the filing requirements for transmitting utilities. A "transmitting utility" means "a person primarily engaged in the business of . . . transmitting communications electrically, electromagnetically, or by light[.]" Haw. Rev. Stat. § 490: 9-102. Debtors fall into the category of a transmitting utility.

With respect to transmitting utility fixtures, a standard UCC filing is sufficient to constitute a fixture filing of a transmitting utility. Haw. Rev. Stat. § 490: 9-502(b). Only the requirements for the standard UCC filing must be met. See, Julian B. McDonnell, *1C-15 Secured Transactions Under the UCC §15.02* (2003)(stating that "[t]here is no need for the filing to state that it covers fixtures, to provide a real estate description or to give the name of a record owner"); Haw. Rev. Stat. §490: 9-501 at cmt. 5 (stating "[t]he usual filing rules do not apply well for a transmitting utility . . . The nature of the debtor will inform persons searching the record as to where to make a search.").

Plaintiff filed a financing statement and transmitting utility filing statements with the Hawaii Bureau of Conveyances and with the Delaware Secretary of State

as required under Haw. Rev. Stat. § 490: 9-501. Plaintiff has a valid and perfected security interest in all of the Debtors' fixtures.

## G. Deposit Accounts

The agreements governing Debtors' deposit accounts at the Bank of Hawaii and First Hawaiian Bank (collectively, the "Banks") are governed by the laws of the State of Hawaii. The Banks are Hawaii state banks, not national banks. The Hawaii UCC governs perfection of a security interest in the deposit accounts. Haw. Rev. Stat. §§ 490: 9-304(a), (b)(2).

Under the Hawaii UCC, perfection of a security interest in a deposit account can only be achieved by establishing "control" of the deposit account. Haw. Rev. Stat. §§ 490: 9-312(b)(1), 490: 9-314(a). Control is established in one of three ways:

(1) The secured party is the bank with which the deposit account is maintained;

(2) Debtor, secured party, and [depository] bank have agreed in an authenticated record that the [depository] bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by Debtor; or

(3) The secured party becomes the [depository] bank's customer with respect to the deposit account.

Haw. Rev. Stat. § 490:9-104(a)(1)-(3).

There is a genuine issue of fact as to whether Plaintiff has established

15

"control." With respect to the first method of obtaining control, only the Plaintiff is the secured party, and the Plaintiff is not "the bank with which the deposit account is maintained." With respect to the second method, Plaintiff has brought forth no evidence proving that Debtors, Plaintiff, and the Banks have an agreement directing disposition of the funds in the deposit accounts without further consent by Debtors. With respect to the third method, there is no evidence that Plaintiff is a customer of the Banks with respect to the deposit accounts.

Plaintiff's argument that it has established control of the deposit accounts under § 490:9-104(a)(1) because the Banks are members of the Secured Lender group (and LCPI is collateral agent for that group) is unavailing. The Amended Guaranty and Collateral Agreement grants a security interest in the deposit accounts only to Plaintiff-LCPI, not to any of the other Secured Lenders.

Plaintiff is the only secured party with respect to the deposit accounts. Since Debtors' deposit accounts are not maintained with the secured party, the Secured Lenders can only obtain control by becoming the bank's customer with respect to the deposit account or by a tripartite agreement with the Banks, Debtors, and the secured party-LCPI giving the Secured Lenders the right to direct disposition of the funds in the deposit accounts. See, Julian B. McDonnell, *UCC Secured Transactions; Perfection of Security Interests: Control*, 1-6 Secured Transactions Under the UCC § 6.07 (2009).

The comments to Haw. Rev. Stat. § 490:9-102 make clear that, where a security interest in a deposit account is granted to one party as collateral agent, only that party is the secured party with respect to the deposit account. Haw. Rev.

16

Stat. § 490:9-102(a) at cmt. 2(b) (noting that, in a multi-bank loan, where one bank acts as agent for the group, "[i]f the security interest is granted to the banks, then they are the secured parties. If the security interest is granted to Bank A as collateral agent, then Bank A is the secured party").

The motion for summary judgment will be denied as to the deposit accounts at First Hawaiian Bank and Bank of Hawaii.

**H.     Investment Account**

Debtors' $68.2 million investment account at Wells Fargo Bank is subject to Plaintiff's security interest.

The Amended Guaranty and Collateral Agreement grants a security interest in "all investment property". The investment account is a 'securities account' as defined in Haw. Rev. Stat. § 490:8-501(a), and a type of 'investment property' as defined in Haw. Rev. Stat. § 490:9-102(a). The security interest in the investment account was perfected by Plaintiff's filing of 'all assets' UCC-1 and 'transmitting utility' financing statements, covering 'all assets' of Debtors.

The motion for summary judgment will be granted as to the investment account at Wells Fargo Bank.

**V.     CONCLUSION**

For the reasons stated above, an order will be entered granting Plaintiff's motion for summary judgment in part and denying it in part.

The order will grant summary judgment to Plaintiff as to the validity of its (1) Mortgage against Encumbered Real Property; (2) liens against the easements and rights of way over or appurtenant to the Encumbered Real Property; (3) the

security interest in fixtures attached to the Encumbered Real Property and fixtures not attached to the Encumbered Real Property; and (4) the investment account at Wells Fargo Bank.

The motion will be denied as to claimed liens and security interests against (1) deposit accounts at First Hawaiian Bank and Bank of Hawaii; and (2) motor vehicles.

Defendant's request for partial summary judgment in its favor will be denied.

This opinion will serve as the court's findings of fact and conclusions of law, pursuant to Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052.

Dated: August 20, 2009

_____
LLOYD KING
UNITED STATES BANKRUPTCY JUDGE